UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCINE CEJKA                                    Case No. 12-11102

        Plaintiff,                          Robert H. Cleland
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On March 13, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 16).

### B.  Administrative Proceedings

Plaintiff filed the instant claims on January 23, 2009, alleging that she

became unable to work on December 2, 2008.  (Dkt. 7-2, Pg ID 36).  The claim

was initially disapproved by the Commissioner on August 31, 2009.  (Dkt. 7-2, Pg

ID 36).  Plaintiff requested a hearing and on March 30, 2011, plaintiff appeared via

video hearing with counsel before Administrative Law Judge (ALJ) John Murdock,

who considered the case *de novo*.   In a decision dated April 28, 2011, the ALJ

found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 36-47).  Plaintiff requested

a review of this decision on November 2, 2011.  (Dkt. 7-2, Pg ID 32).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits,[1] the Appeals Council, on April 28, 2011, denied plaintiff's

request for review.  (Dkt. 7-2, Pg ID 33-35); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

　　For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED IN PART AND**

**DENIED IN PART**, that defendant's motion for summary judgment be

**GRANTED IN PART AND DENIED IN PART**, that the findings of the

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Commissioner be **AFFIRMED IN PART AND REVERSED IN PART**, and that this matter be **REMANDED** for further proceedings.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative hearing.  (Dkt. 7-2, Pg ID 45).  Plaintiff's has no past relevant work history.  (Dkt. 7-2, Pg ID 45).  In denying plaintiff's claims, defendant Commissioner considered carpal tunnel syndrome, arthritis, emphysema, bipolar disorder with depression and anxiety, alcohol abuse, and drug abuse.  (Dkt. 7-2, Pg ID 38).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 23, 2009, the application date.  (Dkt. 7-2, Pg ID 38).  At step two, the ALJ found that plaintiff's carpal tunnel syndrome, arthritis, emphysema, bipolar disorder with depression and anxiety, alcohol abuse, and drug abuse were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found plaintiff could perform light work, except no exposure to environmental hazards such as machinery or heights, no more than simple repetitive tasks and instructions, and increased need for supervision.  (Dkt. 7-2, Pg ID 40).  At step five, the ALJ denied plaintiff

benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 7-2, Pg ID 45).

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff first argues that the ALJ's decision to give her treating psychiatrist, Dr. Jafferany's opinion "some weight" fails to follow the regulation providing that the ALJ give "good reasons" for not giving controlling weight to the opinions of a treating physician.  And, plaintiff also contends that the ALJ failed to explain what weight he gave to Dr. Jafferany's opinions.  According to plaintiff, the ALJ's decision giving the opinion of Dr. Jafferany "some weight, where consistent with the above residual functional capacity" is erroneous in and of itself because the RFC is not evidence, is not a factor included in 20 C.F.R 404.1527(d)(2), and is not a proper basis for assessing the opinion of a treating physician.  The ALJ concluded that plaintiff had the residual functional capacity to perform light work and "no more than simple, repetitive tasks and instructions, and increased need for supervision."  (Tr. 15).  According to plaintiff, the restriction of "simple, repetitive tasks and instructions" is nothing more than the definition of unskilled work.  The sole psychological restriction recognized in the ALJ decision is "increased need for supervision."  (Tr. 15).  Plaintiff contends that, had the ALJ given significant weight to the opinions of Dr. Jafferany regarding plaintiff's significantly impaired level of functioning, a finding of disabled would be indicated.

Plaintiff also points to a mental residual functional capacity assessment dated May 9, 2010 by a state agency non-examining evaluator who indicated that plaintiff had marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (Tr. 383).  The assessment indicates plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods of time. There are also moderate limitations noted in the ability to complete a normal work day and work week without interruptions from psychologically-based symptoms. Plaintiff points out that while the ALJ decision gave significant weight to the findings and opinions of the consultative examiner and the state agency medical opinions "as these findings and opinions are consistent with the record as a whole," the ALJ did not actually give significant weight to the mental residual functional capacity assessment of May 9, 2010 (Tr. 383), because the assessment found marked limitations in several areas of functioning that were not incorporated into the RFC or into the hypothetical questions posed by the ALJ to the vocational expert.  (Tr. 91).

Plaintiff also contends that the ALJ failed to discuss the discrepancy between the opinions of the state evaluators and treating psychiatrist Dr. Jafferany. Again, the ALJ failed to give any good, specific reasons for the weight given to the state agency evaluators.  The opinion of a non-examining physician is entitled to

little weight if contrary to the opinion of a treating doctor. And, plaintiff contends that the proper standard for evaluating the weight of the treating doctor's opinion is whether the limitations of the treating doctor are supported by the record, not whether a reviewing doctor disagrees with the limitations. *Hensley v. Comm'r*, 573 F.3d 262, 266-267 (6th Cir. 2009).

Next, plaintiff asserts that the restriction in the ALJ RFC and in the hypothetical question to the vocational expert of repetitive jobs not needing repetitive supervision fails to incorporate the limitations in Dr. Jafferany's Mental Residual Functional Capacity Assessment of March 2009 (Tr. 266-267) of "moderate to marked limitations in her understanding and memory, sustained concentration and persistence, social interaction and adaptation." (Tr. 15). Moderate to marked limitations in concentration and persistence would indicate plaintiff would be off task for significant periods of time during the work day, a restriction omitted in the RFC adopted by the ALJ's decision. Moderate to marked limitations in understanding and memory indicates that plaintiff would need repetitive supervision, which is not adopted in the ALJ's hypothetical, where the vocational expert testified that the hypothetical question from the ALJ excluded repetitive supervision.

The ALJ also found plaintiff's emphysema to be a severe impairment (Tr. 13), but failed to include limitations resulting from plaintiff's emphysema in the

residual functional capacity.  The ALJ found plaintiff's carpal tunnel syndrome to be a severe impairment (Tr. 13), but failed to include limitations resulting from plaintiff's carpal tunnel syndrome in the residual functional capacity.

The medical examination report by Dr. Kauffman of May 10, 2010 indicates lifting and carrying are limited to 25 pounds occasionally and standing and walking less than 2 hours in an 8 hour day with the note, "COPD limits ability to work."  (Tr. 465).  A medical examination report dated May 10, 2010 by Dr. Lori Kauffman provides the current diagnosis of COPD.  (Tr. 374).  Laboratory findings indicate spirometry, COPD, pulse oxymetry, and qualified for oxygen.  (Tr. 374). The clinical impression indicates that the patient is deteriorating.  (Tr. 375). Physical limitations indicate that the patient can occasionally (1/3 of an 8 hour day) lift 10 pounds and can never lift 20 pounds.  For standing/walking and sitting, Dr. Kauffman does not mark any box applicable to sitting less than 6 hours or sitting about 6 hours in an 8 hour work day and marks all 3 boxes indicating standing or walking less than 2 hours, at least 2 hours, and about 6 hours in an 8 hour work day.  (Tr. 375).  The ALJ gave the opinions of Dr. Kauffman little weight "because other medical opinions are more consistent with the record as a whole."  (Tr. 20). Once again, according to plaintiff, the reasons given by the ALJ for the weight given to the opinions of a treating physician are conclusory and are not, good, specific reasons.

A consultative evaluation by Dr. Bielawski concluded that plaintiff had emphysema. The exam was consistent with mild emphysema. Her breath sounds were mildly distant and mildly coarse. (Tr. 342). Dr. Bielawski also stated, "I think that there is underlying carpal tunnel syndrome and I think that is her main issue regarding her ability to maintain gainful employment." Dynamometer shows compression of 30 pounds on the right and 35 pounds on the left with some compressions of 7 pounds on the right and 6 pounds on the left. She did state that her symptoms reoccur with about 2 minutes of use. She is wearing splints quite frequently. (Tr. 342). A physical residual functional capacity evaluation by Dr. Damore of August 28, 2009 indicated limitations in the upper extremity due to uncorrected carpal tunnel. (Tr. 344). Although the ALJ says he gave significant weight to the opinions of the state agency doctors (Tr. 20), plaintiff argues that the RFC adopted by the ALJ fails to include any limitation in the use of the upper extremities.

Plaintiff also contends that the ALJ erroneously interpreted Dr. Kauffman's report to indicate that plaintiff could "stand and/or walk about 6 hours per work day." (Tr. 18). Dr. Kauffman's medical examination report for the Department of Human Services of May 10, 2010 (Tr. 465) indicates that all 3 boxes were checked for standing less than 2 hours, standing at least 2 hours, and standing about 6 hours in an 8 hour work day, indicating that Dr. Kauffman's opinion was that plaintiff

was limited to standing or walking less than 2 hours in an 8 hour work day and that she would be limited for greater times, also.  According to plaintiff, if the checking of multiple boxes raised any ambiguity, then the ALJ had a duty to obtain a clarification from plaintiff's treating internal medicine physician.  If there was an ambiguity in the medical records regarding the effects of plaintiff's medical history on the treatment of her symptoms, the ALJ had a duty to request clarification of any ambiguity from plaintiff's physicians.  20 C.F.R. 404.1512(e) provides that the Commissioner will recontact medical sources when "we will need additional information to reach a determination or a decision."  As construed by the ALJ, the treatment record "contains a conflict or ambiguity which must be resolved."  20 C.F.R § 404.1512 (e)(1).  Rather than re-contacting plaintiff's treating psychiatrists for a valid medical opinion regarding the effect of plaintiff's medical history on her doctor's diagnosis, according to plaintiff, the ALJ adopted the interpretation most unfavorable to plaintiff and states no basis in the medical record for reaching this interpretation.  The medical examination report by Dr. Kauffman of May 10, 2010 also contains the note, "COPD limits ability to work."  (Tr. 465).  The ALJ erroneously found that Dr. Kauffman's opinion placed no restriction on plaintiff's residual functional capacity.  Plaintiff says that the ALJ erred in misinterpreting Dr. Kauffman's report, in failing to give any weight to Dr. Kauffman's opinion that plaintiff was limited to standing or walking for less than 2 hours in an 8 hour work

day, and in failing to give any reason for not providing any weight to this opinion by plaintiff's treating physician. Had the ALJ decision given the opinion of treating physician Dr. Kauffman controlling or substantial weight, plaintiff contends that a finding of disabled would have been indicated.

While the ALJ finds plaintiff's emphysema to be a severe impairment (Tr. 13), plaintiff contends that he erroneously found that the severity of plaintiff's COPD is not supported by medical evidence of record. (Tr. 19). To support this finding, the ALJ states that "there is no documentation in the record supporting the plaintiff being supplied supplemental oxygen." (Tr. 19). As a result, the ALJ fails to incorporate any limitation related to plaintiff's COPD in the RFC other than light work. (Tr. 15). Further, the ALJ gives "little weight" to the opinion of Dr. Kauffman "because other medical opinions are more consistent with the record as a whole." (Tr. 20). The weight given to Dr. Kauffman's opinion that plaintiff's COPD "limits ability to work - SOB with exertion" (Tr. 465) and the failure to include any exertional limitation based on plaintiff's COPD and shortness of breath is based on the erroneous conclusion that plaintiff was not receiving supplemental oxygen. According to plaintiff, had the ALJ correctly found that plaintiff was, in fact, on supplemental oxygen, he would have found that the severity of plaintiff's symptoms and Dr. Kauffman's opinions were both supported by the medical evidence of record.

Report and Recommendation
Cross-Motions for Summary Judgment
*Cejka v. Comm'r*; Case No 12-11102

The medical evidence of record clearly indicates, according to plaintiff, that she used supplemental oxygen. Dr. Kauffman's May 10, 2010 medical examination report for the Michigan Department of Human Services contains the hand-written notation immediately above the box for "current medications": "Patient on oxygen." (Tr. 464). Oxygen was prescribed on October 26, 2009. (Tr. 469). A medication review from Tuscola Behavioral of November 27, 2009 notes that she is carrying an oxygen canister. (Tr. 447). A medication review from Tuscola Behavioral notes that prior to her psychiatric hospitalization on December 2, 2009, her case worker visited her house and noted that, due to her depressed state she was not using her oxygen mask. (Tr. 446). A medical social questionnaire completed by the plaintiff on May 1, 2010 indicates that prescribed medications include oxygen tanks; house oxygen plugs in at night. (Tr. 377). Plaintiff testified that she sleeps with an oxygen mask on every night and uses oxygen during the day "when I get exhausted." (Tr. 71). Plaintiff also testified that she gets short of breath during the day to the extent she gets dizzy, light headed, tired, and has to sit down. (Tr. 88). The ALJ finding that there is no documentation that plaintiff was on supplemental oxygen was not supported by substantial evidence or record. Both plaintiff's testimony (Tr. 71) and the medical record (Tr. 71, 377, 446, 447, 464) confirm that plaintiff was on supplemental oxygen. Plaintiff contends that a finding that the plaintiff was on supplemental

Report and Recommendation
Cross-Motions for Summary Judgment
*Cejka v. Comm'r*; Case No 12-11102

oxygen would have resulted in a finding that plaintiff has substantial limitations as a result of her COPD and the residual functional capacity would have been substantially restricted and a finding of disabled would have been indicated.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ's RFC finding concerning plaintiff's mental limitations is supported by Ron Marshall, Ph.D., a state agency psychologist, who reviewed plaintiff's record.  Dr. Marshall opined that plaintiff retained the ability to do rote tasks within her physical limitations and that she could follow simple instructions and work with others.  (Tr. 337).  He also opined that plaintiff would be unable to perform complex tasks.  (Tr. 337).  According to the Commissioner, this opinion is substantial evidence in support of the ALJ's RFC assessment.  The ALJ also credited plaintiff's complaints that she had difficulty staying on task by requiring additional supervision.  (Tr. 15).  As the ALJ explained during the administrative hearing, a person with this restriction would "need to be supervised a little more closely to stay on task, either to do the job correctly or to avoid attention wandering . . ."  (Tr. 96-97).

The Commissioner also asserts that the ALJ correctly declined to give controlling weight to Dr. Jafferany's opinions.  In March 2009, Dr. Jafferany completed a mental RFC assessment for the state agency and opined that plaintiff had moderate to marked limitations in her understanding and memory, sustained

concentration and persistence, social interaction, and adaptation. (Tr. 267-268). The ALJ reasonably gave Dr. Jafferany only "some weight," noting throughout the decision where it was inconsistent with the rest of the evidence. (Tr. 14-20). And, the Commissioner asserts that the ALJ gave good reasons for discounting Dr. Jafferany's opinion. For example, the ALJ noted that Dr. Jafferany's treatment notes and observations were inconsistent with his opinion that plaintiff had moderate to marked limitations in her understanding, memory, sustained concentration, and persistence. (Tr. 14).

The ALJ also pointed to the discrepancy between Dr. Jafferany's opinion that plaintiff had moderate to marked limitations in social interaction and the record evidence. (Tr. 14, citing Tr. 268). Dr. Jafferany consistently observed that plaintiff was engaged, alert, and oriented, with good eye contact, reactive affect, and good mood. (Tr. 431-41). The ALJ also noted that plaintiff was able to use public transportation and get along with her family (Tr. 14), which further undermined Dr. Jafferany's opinion that plaintiff had difficulty interacting with others. Thus, the ALJ properly concluded that Dr. Jafferany's opinion was inconsistent with the evidence, and therefore, entitled to little weight. Here, the Commissioner contends that the ALJ gave good reasons for discounting Dr. Jafferany's inconsistent opinion, and reasonably relied upon Dr. Marshall's opinion, which was supported by the record as a whole.

The Commissioner also maintains that the ALJ appropriately accounted for plaintiff's moderate limitations in concentration, persistence, or pace in the RFC and hypothetical question to the vocational expert.  Sixth Circuit has expressly held that an ALJ is not required to use the phrase "moderate limitation in concentration, persistence, or pace" in the hypothetical question.  *Varley v. Secretary of HHS*, 820 F. 2d 777, 779 (6th Cir. 1987).  Rather, an ALJ's hypothetical question must accurately reflect Plaintiff's moderate limitations.  Here, according to the Commissioner, the mental limitations included in the ALJ's hypothetical question were based, in large part, on the opinion provided by Dr. Marshall, who opined that plaintiff retained the ability to do rote tasks and follow simple instructions.  (Tr. 337).

While the ALJ listed plaintiff's emphysema as a severe impairment (Tr. 13), he appropriately concluded that plaintiff's condition was not as severe as she alleged (Tr. 19), and her condition did not warrant additional restrictions on plaintiff's ability to work that were not already included in the ALJ's RFC assessment limiting plaintiff to light work.  In arriving at this finding, the ALJ considered the report from Bret Bielawski, D.O, who examined plaintiff in August 2009.  (Tr. 340-42).  Dr. Bielawski noted that plaintiff was diagnosed with emphysema and indicated that she had smoked cigarettes for the past 28 years, generally smoking one pack per day, but had recently cut back to six cigarettes

daily.  (Tr. 340).  He diagnosed plaintiff with "mild emphysema," and noted that

her breath sounds were mildly distant and coarse.  (Tr. 342).  These findings are

consistent with the ALJ's evaluation of the severity of plaintiff's emphysema, and

do not suggest that plaintiff had additional restrictions related to her condition.

The ALJ also noted that plaintiff had been repeatedly advised to quit smoking (Tr.

19).  The Commissioner points out that nothing in the record indicates that plaintiff

quit smoking.  As the Sixth Circuit has noted, "[i]f the claimant in this case

chooses to drive himself to an early grave, that is his privilege - but if he is

not truly disabled, he has no right to require those who pay social security taxes to

help underwrite the cost of his ride."  *Sias v. Sec'y of HHS*, 861 F.2d 475, 480 (6th

Cir. 1988); *see also Galinis v. Comm'r of Soc. Sec*., 2008 WL 360656, *8 (W.D.

Mich. 2008) ("[W]here a claimant declines to stop smoking despite being

instructed by her care providers otherwise is an appropriate factor to consider when

assessing the claimant's credibility.").  According to the Commissioner, given that

plaintiff continued to smoke despite her difficulties, the ALJ reasonably

determined that plaintiff's condition was not as severe as she alleged.

     The Commissioner says that the ALJ correctly noted that plaintiff had not

been prescribed with continuous supplemental oxygen.  (Tr. 19).  While plaintiff

argues that this finding was erroneous, and cites to several records indicating that

she used oxygen (Pl.'s Br. 28, citing Tr. 377, 465, 469), the Commissioner argues

that she misinterprets the ALJ's statement.  The ALJ did not find that plaintiff

never used oxygen.  Rather, at the administrative hearing, the ALJ specifically

questioned plaintiff about the use of her oxygen (Tr. 70), and plaintiff testified that

she only used the oxygen at night when she slept and only "once in a while, like

when I get exhausted during the day." (Tr. 71).  Plaintiff's testimony is consistent

with the ALJ's finding that plaintiff did not need "continuous" supplemental

oxygen. (Tr. 19).  Thus, according to the Commissioner, there is no error in the

ALJ's finding concerning how often plaintiff used oxygen or his evaluation of

plaintiff's emphysema.

The Commissioner also contends that the ALJ reasonably discounted the

opinion from Dr. Kauffman, an internal medicine doctor who assessed plaintiff's

condition in May 2010. (Tr. 465).  Dr. Kauffman completed a check-box form and

noted that plaintiff could only lift up to 10 pounds occasionally and never

lift 20 pounds. (Tr. 465).  She also opined that plaintiff would be able to use her

upper and lower extremities, bilaterally, for repetitive actions and stated that

plaintiff had no mental limitations. (Tr. 465).  Dr. Kauffman did not assess

plaintiff's ability to sit, but did provide an opinion with respect to Plaintiff's ability

to stand/walk. (Tr. 465).  In particular, she checked three boxes on the assessment

form indicating that plaintiff could:

> • Stand and/or walk less than 2 hours in an 8-hour day;

• Stand and/or walk at least 2 hours in an 8-hour day; and

• Stand and/or walk about 6 hours in an 8-hour day

(Tr. 465).  According to the Commissioner, the ALJ reasonably interpreted these findings to mean that Dr. Kauffman believed that plaintiff could stand/walk about 6 hours in an 8-hour day.  Plaintiff argues that Dr. Kauffman's opinion is ambiguous, and that the ALJ had a duty to obtain clarification from Dr. Kaufman about her opinion.  However, the Commissioner maintains that plaintiff's argument overlooks the fact that the ALJ ultimately dismissed Dr. Kaufmann's opinion because it was inconsistent with the other evidence - not because her opinion was unclear.  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (Where the treating physician's "opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence," the ALJ was not required to recontact the treating physician.).  For example, Dr. Kauffman stated that plaintiff had no mental limitations, although the record clearly supports a finding that plaintiff did have such restrictions.  With respect to plaintiff's physical impairments, there is no basis or support for Dr. Kauffman's assertion that plaintiff could only lift 10 pounds occasionally and never lift 20 pounds.  (Tr. 465).  Significantly, Dr. Kauffman failed to explain this finding or cite any evidence in support of her opinion.  Given that Dr. Kauffman's opinions were inconsistent and unsupported with the record, the ALJ reasonably

gave little weight to her opinion.

Plaintiff also alleges that her carpal tunnel syndrome is disabling, but the Commissioner contends that the ALJ correctly noted that the evidence in the record did not support the severity of her complaints. (Tr. 19). Specifically, the ALJ cited an EMG test showing only mild to moderate carpal tunnel syndrome, and there was no evidence of record indicating that plaintiff had undergone carpal tunnel release or received medication related to her condition. Although the ALJ noted that plaintiff wore wrist splints, he also noted that there was no documentation that these were prescribed by a treatment provider. (Tr. 19). The absence of any significant restrictions or evidence supports the ALJ's decision. *Higgs v. Sec'y of HHS*, 880 F.2d 861, 863 (6th Cir. 1988) (lack of evidence in the record countered claimant's allegations of disabling impairments).

Although plaintiff cites to records showing the presence of headaches intermittently over the course of her treatment, she has failed to show that her headaches rose to the level of a severe impairment. In fact, according to the Commissioner, plaintiff never previously claimed that her headaches were disabling. Rather, she specifically declined to mention her headaches when she was asked to identify what conditions limited her ability to work. (Tr. 185). And, at the administrative hearing, plaintiff's attorney did not suggest that headaches contributed to her disability claim. (Tr. 77-79). Plaintiff now argues that the ALJ

erred in failing to find that her headaches would cause unpredictable absences from work and periods of time during which she would be off task. (Pl.'s Br. 24). However, plaintiff has not put any forth any evidence showing that her headaches produced such limitations. Accordingly, the ALJ did not err in declining to account for plaintiff's alleged headaches in his RFC assessment.

Plaintiff incorrectly argues that the ALJ gave significant weight to the opinion from Rose Damore, a single decision maker who evaluated Plaintiff's record in August 2009. (Pl.'s Br. 23, citing Tr. 343-50). As an initial matter, the Commissioner notes that plaintiff improperly characterizes Ms. Darmore as a doctor. (Pl.'s Br. 23). In any event, the ALJ did not cite to Ms. Darmore's opinion and did not rely on it in forming his RFC assessment. As such, plaintiff's arguments lack merit. Plaintiff also incorrectly argues that the ALJ gave "significant weight" to the opinion from Michael Buch, a social worker, who assessed Plaintiff's mental capacity in May 2010. (Pl.'s Br. 17, citing Tr. 383-84). However, the ALJ clearly stated that he gave Mr. Buch's opinion "limited weight, as he is not a treating physician and his opinion is not supported by the objective medical evidence or clinical exams by treating physicians." (Tr. 20). Indeed, Mr. Buch simply completed a check-box questionnaire without providing any supporting evidence or explanation for the basis of his findings. Accordingly, the Commissioner argues that plaintiff's assertions are factually incorrect.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Mental Impairment

As both parties acknowledge, greater deference is generally given to the

opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id*. at 406, citing § 404 .1527(d)(2).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."  In this case, the ALJ rejects Dr. Jafferany's opinion regarding plaintiff's social functioning because he "observed throughout their treating relationship that she presented as engaged, alert and oriented, with good eye contact, reactive affect and good mood." (Tr. at 14).  The undersigned does not see why such observations are necessarily inconsistent with Dr. Jafferany's opinions and the ALJ does not explain this line of reasoning.

Dr. Jafferany also opined that plaintiff had moderate to marked limitations in her understanding and memory, sustained concentration, and persistence, the ALJ concluded that this was not supported by his consistent observations throughout their treating relationship.  While the Commissioner points to a variety of evidence in the record to support the ALJ's position in this regard, the undersigned notes

that only statement identified in the ALJ's decision is: "For example, in January 2011, he noted her thought processes were clear and logical, and she was psychiatrically stable." (Tr. 14). In addition, the record is replete with observations from the team of psychiatric professionals working under Dr. Jafferany regarding plaintiff's confusion, memory issues, inability to understand forms, inability to understand the social security process, not understanding why she had to meet with certain people, forgetting appointments, etc. While the ALJ made some observations that the plaintiff's complaints were not consistent with Dr. Jafferany's treatment records (Tr. 19), the remainder of the ALJ's analysis of Dr. Jafferany's opinion is as follows: "The opinion of Dr. Jafferany is given some weight, where consistent with the above residual functional capacity." (Tr. at 20). This analysis is simply not adequate.

Moreover, if the ALJ determined that Dr. Jafferany's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Jafferany's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R.

§ 404.1527(d)(2)(i).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Jafferany's opinion should not be

given controlling weight or even deference, as required by the regulations. 20

C.F.R. § 404.1527(d)(2).  In addition, the undersigned finds the ALJ's analysis of

purported "inconsistencies" between Dr. Jafferany's opinions and his office notes

to be wholly unsatisfactory.  The ALJ failed to adequately consider the dozens of

therapy notes and observations regarding plaintiff's mental condition over the

years she treated with Dr. Jafferany and the professional psychiatric staff under his

supervision.

As to the remaining justifications offered by the ALJ, the undersigned notes

that "the courts may not accept appellate counsel's post hoc rationalizations for

agency action. It is well-established that an agency's action must be upheld, if at

all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993,

*6 (6th Cir. 1993) (unpublished opinion), quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted).  "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"  *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991).  Thus, the Commissioner's *post hoc* rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning his omissions in considering the opinion of plaintiff's treating physician.  This matter should be remanded for the ALJ to further explain the weight given plaintiff's treating physician opinions.  Given this conclusion, additional vocational expert testimony may be required, and plaintiff's credibility will have to be reconsidered, depending on the conclusions the ALJ's reaches on remand.

### 2.    Emphysema/COPD

The ALJ gave the opinions of Dr. Kauffman little weight "because other medical opinions are more consistent with the record as a whole."  (Tr. 20). Unfortunately, the ALJ does not really explain on what other opinions or evidence he relies.  Dr. Kauffman explicitly opined that plaintiff has shortness of breath with exertion and that her COPD limits her ability to work.  Dr. Bielawski, the only other physician who apparently looked at plaintiff's COPD/emphysema issues did

not offer an explicit opinion on whether or to what extent plaintiff's COPD and emphysema might limit her ability to work.  For similar reasons discussed above with respect to Dr. Jafferany, a remand is required for the ALJ to more fully explain the reasons for rejecting Dr. Kauffman's opinion and to explain precisely what weight it was given.  Again, plaintiff's credibility will have to be reconsidered based on a new assessment of Dr. Kauffman's opinions and additional vocational expert testimony may be necessary.

In addition, parts of Dr. Kauffman's opinion are ambiguous, in the view of the undersigned.  As both parties acknowledged, she checked multiple boxes in certain categories and her opinion of plaintiff's lifting ability and standing/ walking ability are not entirely clear.  The Social Security Administration regulation details how to satisfy this requirement for resolving medical record ambiguities:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not

> contain all the necessary information, or does not appear
> to be based on medically acceptable clinical and
> laboratory diagnostic techniques. We may do this by
> requesting copies of your medical source's records, a
> new report, or a more detailed report from your medical
> source, including your treating source, or by telephoning
> your medical source. In every instance where medical
> evidence is obtained over the telephone, the telephone
> report will be sent to the source for review, signature and
> return.

20 C.F.R. § 404.1512(e)(1). The Sixth Circuit has described a two-part test from

Social Security Ruling 96-5p, which parallels the requirements in § 404.1512(e).

First, the evidence in the record must not support the treating physician's opinion.

*Ferguson v. Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010); *see also Lovelace v.

Astrue*, 2011 WL 2670450 (E.D. Tenn. 2011). Second, the ALJ must be unable to

ascertain the basis of the opinion from the evidence in the record. *Id*. In *Ferguson*,

the Sixth Circuit determined that the second prong of the test was not met because

the ALJ explained that the applicable physician's opinion was based on

self-reported history and subjective complaints, not on objective medical evidence.

*Id*. The Sixth Circuit noted that "to the extent the ALJ 'rejected' Dr. Erulkar's

'opinion of disability,' he did so not because the bases for her opinion were unclear

to him, but because those bases, Ferguson's self-reported history and subjective

complaints, were not supported by objective medical evidence." *Id*.

In this case, it is not entirely clear that the ALJ was required to recontact Dr.

Kauffman.  However, given that a remand is necessary as discussed above because the ALJ did not give sufficiently good reasons for rejecting her opinion, the undersigned also suggests that the ALJ should consider whether recontacting Kauffman is necessary and appropriate under the circumstances.

    3.    Carpal Tunnel

    Plaintiff argues that the ALJ erred by finding that her carpal tunnel was severe but failing to include any resulting limitations in the RFC.  In *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 427-28 (6th Cir. 2007), the Sixth Circuit considered and rejected an argument similar to the one raised by plaintiff here:

>    Griffeth's second contention is that the ALJ's analysis was internally inconsistent because he classified Griffeth's impairment as "severe" but treated it as "non-severe." At step two of the sequential evaluation process the ALJ determined that because Griffeth's depression was a medically determinable impairment that caused "some" limitations of his ability to perform "some" basic work-related activities, it was a "severe" impairment. Later in his analysis he determined that Griffeth's depression had only a minimal effect on his ability to concentrate.
>                                    ...
>    The ALJ did not misinterpret the severity regulation. At step two "significant" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d). The purpose of the second step of the sequential analysis is to

enable the Commissioner to screen out "totally groundless claims." We have construed the step two severity regulation as a "*de minimis* hurdle" in the disability determination process. Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

The ALJ's determination that Griffeth's depression caused "some" limitation of his ability to do work activity is consistent with a finding that Griffeth's depression caused more than a minimal limitation in his ability to do basic work activities. The ALJ's finding that the limitation was more than minimal, however, was not inherently inconsistent with his finding that the limitation has "little effect" on the claimant's ability to perform basic work [ ]related activities. Because the ALJ gave Griffeth the benefit of the doubt at step two of the sequential analysis, the ALJ went on to consider not only Griffeth's "severe" impairments, but all of Griffeth's other impairments as well, and made his determination based upon the effects of the combination of impairments on Griffeth's ability to perform basic work-related activities. This expanded review worked to Griffeth's benefit, not to his detriment.

(Internal citations omitted); *see also Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that Boyd had 'a combination of impairments that is severe' did not foreclose a finding that Boyd had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her

functional capacity to do work.  One does not necessarily establish the other.").

Plaintiff acknowledges that no treating physician imposed any limitations on

plaintiff as s result of her carpal tunnel syndrome, and does not point to any

limitations imposed by any consulting or examining physician.  As the

Commissioner points out, there is no "Dr. Damore" in the record.  Rather, Rose

Damore is a non-medical single decision-maker whose opinions are not entitled to

any consideration by the ALJ.   (Tr. 350).  *See Maynard v. Comm'r*, 2012 WL

5471868,*9 n. 3 (E.D. Mich. 2012) (Agency policy is that findings by SDMs are

not opinion evidence that ALJ's should consider and address in their decisions).

The undersigned finds no basis to disturb the ALJ's findings on this issue.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED IN PART AND**

**DENIED IN PART**, that defendant's motion for summary judgment be

**GRANTED IN PART AND DENIED IN PART**, and that the findings of the

Commissioner be **AFFIRMED IN PART AND REVERSED IN PART**, and that

this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 27, 2013                     s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 27, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John L. Wildeboer, Laura A. Sagolla, AUSA, and Niranjan Emani, Social Security Administration</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Cejka v. Comm'r*; Case No 12-11102